13 A.3d 864 (2010)
Stephen BRUNELLE and another
v.
BANK OF NEW YORK MELLON and another.
No. 2009-689.
Supreme Court of New Hampshire.
Submitted: June 23, 2010.
Opinion Issued: October 27, 2010.
*865 Stephen and Ellen Brunelle, pro se, by brief.
Sulloway & Hollis, P.L.L.C., of Concord (Derek D. Lick on the brief), for defendant Bank of New York Mellon.
*866 BRODERICK, C.J.
The plaintiffs, Stephen and Ellen Brunelle, appeal an order of the Trial Court (McHugh, J.) authorizing the defendants, Bank of New York Mellon; Novastar Mortgage, Inc.; Harmon Law Offices, P.C.; and Saxon Mortgage Services, Inc., to foreclose on the plaintiffs' property if they fail to repay funds required to allow rescission of the mortgage contract. They argue that the trial court erred in modifying their rescission rights under the Truth in Lending Act ("the Act"), see 15 U.S.C.A. §§ 1601 et seq. (West 2009). We affirm.
The following facts appear in the record. The plaintiffs obtained a loan for $346,500.00 from Novastar Mortgage, Inc. (Novastar) in August 2005 for property located at 7 Crane Crossing Road in Newton, New Hampshire. Of the loan proceeds, $231,190.74 was paid to Novastar to pay off a preexisting mortgage and $109,371.55 was paid directly to the plaintiffs in cash. Defendants Saxon Mortgage Services, Inc. and Bank of New York Mellon (hereinafter "defendants") were subsequently assigned Novastar's rights under the note. The defendants initiated foreclosure proceedings against the plaintiffs in early July 2008. The plaintiffs then filed an equity proceeding seeking to enjoin the foreclosure.
By letter dated July 14, 2008, the plaintiffs wrote to the Harmon Law Offices in Newton, Massachusetts, stating in part: "We are writing to officially rescind or cancel the loan referenced above, dated August 17th 2005 by Novastar Mortgage Inc. Upon examining our notice of right to cancel, we discovered that there was no address for Novastar Mortgage, which is in violation of regulation Z of the [Act]." The defendants agreed to forego foreclosure and to allow the plaintiffs to rescind; under the defendants' rescission proposal, the plaintiffs would repay the cash they received at closing, minus finance charges and closing costs. By letter dated September 8, 2008, the plaintiffs rejected this proposal, arguing that they were not liable for repayment of any cash received at the closing, and were also entitled to a cash payment of $67,260.
When no agreement concerning rescission was reached, trial was held on the original equity petition filed by the plaintiffs. We note that the appellate record does not contain a copy of that petition. The trial court found, however, that the plaintiffs "raised in their pleadings a series of `technical defenses.'" The court was asked to enjoin the foreclosure because the lender did not have the original note, the annual percentage rate disclosed on the truth-in-lending disclosure was incorrect, and the notice of the right to cancel provided to the plaintiffs at the closing on the loan did not contain the address of the lender as required under Regulation Z of the Act.
The court found that the only defense with any legal merit was the fact that the Notice of Right to Cancel document given to the plaintiffs at closing included only the name of the lender and not the lender's address. The court further found, however, that this omission did not prejudice the plaintiffs because at the time of the closing they worked for the mortgage holder and obviously knew its address. The trial court concluded that "there is no legal or equitable basis for the continued prohibition against the defendants from foreclosing on the mortgage." The trial court then stated: "Although this would appear to be an exercise in futility, so as to give the plaintiffs one last opportunity to implement their right of rescission, the Court orders that the defendants notify the plaintiffs within thirty days as to exactly how much monies they would have to pay for rescission to take place." The plaintiffs *867 were then allowed thirty days from receipt of the calculation of the amount due to pay that amount to the defendants by cash or certified check.
On appeal, the plaintiffs argue that the trial court erred in finding that the defendants were entitled to proceed with foreclosure because even though the defendants conceded at trial that they violated the Act, they failed to perform their rescission duties. Given this failure, the plaintiffs argue that their duty to tender never arose and that rescission is a complete defense to foreclosure of the property. Because the issues before us present only questions of law, we review them de novo. See Coco v. Jaskunas, 159 N.H. 515, 518, 986 A.2d 531 (2009).
The Act provides, in pertinent part:
When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.
15 U.S.C.A. § 1635(b).
Regulation Z of the Truth in Lending Regulations, with respect to the effects of rescission, provides:
(d) Effects of rescission.
(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

*868 (4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.
12 C.F.R. § 226.23(d) (2010).
The plaintiffs first assert that under the Act and Regulation Z, the defendants' mortgage automatically became void, and their right to foreclose was lost, when the plaintiffs sent the defendants their notice of rescission. However, neither the Act nor Regulation Z establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract. Large v. Conseco Finance Servicing Corp., 292 F.3d 49, 54 (1st Cir.2002). Rather, the lender's security interest becomes void only when the right to rescind is available, either by agreement between the borrower and lender, or by court order. See id. at 54-56.
The plaintiffs next contend that the defendants were required to file a declaratory judgment action within twenty days after receiving the notice of rescission if they disputed it. In support of this argument, the plaintiffs cite only section 1635(b) of the Act. Nothing in the plain language of section 1635(b), however, required the defendants to file a declaratory judgment action within twenty days in order to dispute the notice of rescission, and we reject the plaintiffs' position that the defendants' failure to do so acts as the equivalent of an agreement that the right to rescind was available. See id. at 54; cf. State v. Chrisicos, 159 N.H. 405, 407, 986 A.2d 654 (2009) (supreme court will not add language to statute that legislature did not see fit to include).
In this case, the defendants disputed the plaintiffs' claimed right to rescind the full amount of the loan, and the court conditioned the plaintiffs' rescission rights upon tender of the loan proceeds. Therefore, we reject the plaintiffs' claim that the defendants lost their foreclosure remedy when the plaintiffs sent their notice of rescission. Absent compliance with the terms of the court's order, the plaintiffs had advanced only a claim seeking rescission. See Large, 292 F.3d at 55.
The plaintiffs next challenge the trial court's authority to condition their right to rescind, construing the Act and Regulation Z as requiring the unconditional release of the mortgage regardless of the plaintiffs' ability to tender the balance due on the loan. In essence, they claim the right to a substantial windfall without any further obligation on their part. "This construction not only offends traditional notions of equity, but misinterprets the procedural requirements of § 1635(b)." American Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 820 (4th Cir.2007).
Courts have an inherent power to condition rescission under proper circumstances. In re Lynch, 170 B.R. 26, 29 (Bankr.D.N.H.1994). The rescission process under the Act has two goalsto place the consumer in a much stronger bargaining position, and to return the parties most nearly to the position they held prior to entering into the transaction. Id. The last sentence of section 1635(b), which was added by Congress in 1980, reflects this second goal, and gives courts discretion to modify the procedures in the Act, including by "conditioning rescissions upon the debtor's prior return of the principal." Id. at 29 (quotation omitted); see also 12 C.F.R. § 226.23(d)(4).
In this case, the plaintiffs contend that the trial court failed to make findings to support equitable modification. We disagree. The trial court found that the deficiency in the documents that led to the notice of rescissionthe absence of the lender's addressdid not prejudice the plaintiffs since they worked for the lender *869 and obviously knew its address. "On the facts of the instant case, Congress could not have intended that the security interest of the defendant[s] be voided when the plaintiffs were unable to tender payment to it." Lynch, 170 B.R. at 29. Accordingly, we conclude that the trial court acted within its discretion by placing conditions upon rescission, and did not err by otherwise declining to void the defendants' mortgage.
Issues raised in the plaintiffs' notice of appeal but not addressed in their brief are deemed waived. See State v. Blackmer, 149 N.H. 47, 49, 816 A.2d 1014 (2003).
Affirmed.
DALIANIS, DUGGAN and HICKS, JJ., concurred.